On behalf of the FOMC, Mr. Barry Ketter. On behalf of the FLE, Mr. Jacob Karagian. Gentlemen, I know we set this for 8 o'clock, and I apologize for our tardy start this morning, but we learned that Justice Ballmer passed away last night and there were some arrangements that had to be made, so we apologize for the late start. And are you both ready to proceed? Yes. You may proceed when you're ready. Good morning to the Honorable Justices, Counsel. I appear today before you regarding a Pension Board decision which was affirmed by the Circuit Court. The basis of the appeal is basically that is this against the manifest way, and actually is it against the entire way of evidence, and I believe it is and should mandate reversal. The secondary issue, while small, goes to the same part of this. It's whether the manifest way of evidence can be overcome with a finding relative to credibility when the finding is not supported by evidence nor written basis. The Board itself has acknowledged to their attorney that there was no written basis as to their finding on credibility and demeanor, and state that this is the type of finding that cannot be put into text but can only be determined in person. The problem with that, Mr. Lambert would state, is that absent a written basis, there's no way to attack it or defend it, and it goes right to the heart of due process. Isn't that what trial judges do all the time? They make determinations on credibility. They don't really articulate. They just find that one witness was more credible than another and may not say point by point why they find one witness more credible than another. That's what they do in general, but I think what they're doing is they're judging the weight of credibility of one against the other. Here they're trying to say it's credibility without basis that throws out the entire record. The entire record of evidence, including the applicant who testified, and I would say testified in an unrebutted, unimpeached, and uncontradicted manner, is all thrown out without basis. And I think if you're going to put more weight on somebody, you have to at least say what the basis is, but there's no way to defend or refute it. Was there a DVD presented to the court that showed that your client was apparently doing things that were beyond the norm for someone with his disabilities? Did you say the video? Yes. The video did. Read my comments. I allowed it to go in, and I believe that's demonstrative evidence. Did we get a copy of the video? I went upstairs, reviewed it, came down. I made my comments on theirs that this did not show anything. It did not go beyond any restrictions. As a matter of fact, it's less than 28 minutes and was turned off and on during the course of it. They put no further foundation, but the trial court relied on this, and it's not in evidence. There was actually three exhibits.  It was admitted at the pension board hearing. It never made it to the trial court or the appellate record. I made comments to it, which are part of the record. I believe that it goes in purely as demonstrative. But what I think is a troubling point, the circuit court used it as the basis to affirm, and they weren't even able to view it. But the tape itself is only one of three exhibits that were remiss. I was able to supplement one because I had the second page. But the three exhibits that are missing, or missing parts of it, were the board's exhibits. It was pages of the two doctors and this video. And I believe that if it's not put into evidence, they cannot rely on it, nor should the circuit court judge have said, as a basis to affirm the board, I rely on this. I believe the only way you can rely on it is if you view it and believe that it goes beyond his restrictions. But second of all, absent, and I state the cases, absent laying the proper foundation, it's demonstrative. And demonstrative evidence cannot be used to make a decision. It purely demonstrates. Why do you claim it's purely demonstrative? Because... What does it demonstrate? I mean... Under the case law, without a proper foundation, it goes just purely to demonstrate what he's doing. If you read it, even if you take it, my comments say what I viewed him doing. I also said that I had a problem when the tapers turned on and off. But regardless, it was my opinion and the opinion of Mr. Lambert that he did not exceed anything. He rode around on a lawnmower. He got on and off the lawnmower. Carried a box that they can't even say what's in the box. Did they suggest that it weighed 100 pounds or so many pounds? There was no testimony to it. And they just, at the end, said, well, we believe this showed that he exceeded his limitations. Which I would tell the court, he had five functional capacity evaluations. All of which, when they monitor your heart net, were found to be valid and reasonable. All the doctors, not only his treating but the evaluating doctors on the board, find that he was credible and reliable. There was even a continuance for a second hearing by the pension board because his doctor said, well, maybe there's a chance it was... Wasn't there a second surgery between the first meeting, the first board meeting in March and September? No, there wasn't. They continued it so that they could get further evidence from his treating doctor. The treating doctor came back in the interim, gave another functional capacity and said that there is no way he's going back. But based on my clinical observations, the functional capacity and everything else, his subjective complaints are reasonable, honest, and reliable. And that goes to each one of these functional capacities. But then you have the board saying, we don't find him credible with respect to his reporting of pain. Is that what they said? Yes, without basis. And all the doctors find pain. They even found edema to bones in there. I mentioned the medical findings. They took exception with that because we didn't explain to them each medical finding. If I read the statute right, a board has the right to draw whatever information they want, but it's their duty to do it. I believe it's my duty if they said, we don't understand what medical you're putting forth, explain, bring in experts that they could call experts. But to come out after the hearing and say that I didn't tell them what each thing meant, I find that I'm at a loss. I can't defend it. But if you read the medical findings, you see substantive injuries to these areas that cause ongoing pain. And that's what I believe is the basis. But isn't the only report of pain, pardon me, isn't the only report of pain from your client? He's the one who tells the physicians, I experience pain, and those who conducted the examinations on him, I'm feeling pain. That's all his subjective input into these patients. That's part of it, but based on the subjective complaints when they're doing movement tests or different things, they're catching different deficiencies that would lead to pain in their expert opinion. The heart monitoring is one of the techniques that they use in functional capacity because your heart rate goes up when you go to pain. There's no way to fake that. They have other cross checks. Every cross check in the functional capacity was verified that when he was complaining of pain, these would be increased that mirrored what would normally be expected when you have pain. Are we supposed to send this back for findings of fact because there weren't any or do we reverse it? Well, I believe at this stage it should be reversed. You can send it back for findings of fact, but unless you're going to send it back and tell them that now we're opening the record for you to put in evidence that you didn't put in. No, it's not putting in evidence. It's finding the facts and conclusion of law. Well, let me just give you an example. They did do a finding of fact. One of the things they testified to, he had a lifting restriction. Who testified to? The exhibits went in on the functional capacity. Based on the functional capacity, there was a question by the board saying you have a lifting restriction. You weigh over that. You have stairs in your house. You're going up and down those stairs. So you could do the job of a firefighter. In response to that, I brought out through testimony of his. Sure, he weighs 200 pounds. He goes up and down the stairs. But what they're saying was if you put on boots, the jacket, the helmet, if you had to wear an air pack, carry an axe, you've exceeded it. And you're not just going upstairs in your house with a railing. You're running in to fight a fire. God forbid he has to put an air tank on and bring a body down. He'd never be able to do it. That's the finding in these functional capacities. He cannot meet the minimum requirements of a firefighter. That's why I don't think you even need findings of fact. The record is complete and abundant with all the restrictions that are found that totally stop him from being a firefighter paramedic. The other instance they meant is this failure to renew his EMT certification. The only thing that goes to is if he was going to return to work, it's a condition preceded to returning to work. It's a red herring here. It has nothing to do with disability. And actually what he testified to was since he wasn't in active service at the time, he couldn't go to take that certification. So I think those two just go to the mindset they had at the time. There is really no contradictory testimony. The record is the testimony of the applicant that you cannot disregard if it's not impeached, unrebutted, uncontradicted. And I don't find that if all the record backs him up, that it's not inherently improbable. The functional capacities, five in total back him up. The surgeries show the damage to the area. And all the doctors, not just one, all the doctors opine that he is disabled from firefighter duties. And I think it's not only the manifest way of the record, it's the entire way of the record. One additional question for you. The DVD, you suggested it was the board's exhibit, but you're the appellant. Isn't it your obligation to make a complete record or any inferences that should be drawn against you? I filed a motion to amend the record. I attempted to get documents. The only thing I could get was the one page I had. I was never tendered it. They were well aware when I filed this that the record was remiss. They brought the tape out at a hearing. I had no advanced knowledge. We worked through it. I was never provided a copy. Nonetheless, my point is if it was admitted at the hearing, it's your obligation when you create a record for appeal to include all the exhibits. Well, I believe that if it's their exhibit and they're the board and they're the one required to put the record together and I make a motion to amend, I've made my statements on it. I think that absent that. You're the appellant, though. But how do I get it if they don't tender it to me? I was never tendered a copy. I filed a motion. I made attempts to get the pages of the record and the tape. I was not tendered it. Okay. Question? There's nothing there. Counsel, you'll have a chance to reply. Good morning, Justice Jorgensen, McLaren, and Shostock. May it please the court, my name is Jacob Corraja. And I here represent the Downers Grove Fire Pension Board in defense of the unanimous decision by members Lozara, Stark, Welter, Frank, and Lang to deny Mr. Lambert his disability pension. I ask this court this morning to consider three reasons to uphold the pension board's finding and also the trial court's upholding of those findings. One, the board acted upon credible evidence that Mr. Lambert's subjective statements of pain were not believable, a determination of credibility that it's not reviewable by the trial court or this court. Two, Mr. Lambert made no attempt to argue any causation for medical or explain any other medical terms for the board, the trial court, or this court. And three, any medical causation and or foundation for the video questions have been waived. The ultimate question before you. You're saying that we don't have the ability to question credibility findings? That is correct, Your Honor. And that's upheld by all the controlling case law, especially. Supposed to give you deference, but deference doesn't mean a conclusive presumption that whatever credibility, you know, you're saying that a chicken licking said the sky is falling, the sky is falling. And the administrative agency said, yes, that's true. We would have to give deference, but we wouldn't have to determine that the sky was actually falling and the chicken licking was actually a profit of global warming or some other, you know, catastrophic event. So if we don't have the ability to review credibility, what do we have the ability to review? You have the ability to review the factual findings in the record. So by reviewing the factual findings, don't we have the right to weigh the credibility of all the medical reports? In conjunction with what the board found and whether or not they're they're weighing that credibility was proper and proper. No, Your Honor. The court, the second district in 1951, which is still good law. I realize it's a kind of an old case these days, but it's Ulrich versus Board of Trustees of Fireman Pension Fund of Peoria. Same exact issue that we have here today. In that case, the statute was a little different in 1951 and only required one doctor's report. The fire fire went to the doctor at the board's request and said, I'm having these chest pains. My heart hurts when I run. The doctor said, well, he probably has some sort of a heart issues, circulation issue. I believe he should get a disability. The pension board disagreed and said, we don't believe that he's telling the truth about his chest pain. He told the doctor about his chest pain and we don't believe that he told the doctor the truth either. So therefore, we're not going to give him his pension. The trial court and then the second district agreed with the pension board, stating specifically, we are not here to rejudge the credibility. We were not there at the pension board hearing. We were not the five pension board members, several of whom were active firefighters, one of whom is a retired firefighter, that have been doing this for decades.  So you're saying that in any pension case or any case where you have a firefighter, a police officer, anybody looking for a disability, a long term disability, permanent disability, we can never reverse the pension board? If there's nothing in the record to support it. Okay, how many doctors do we have here saying that this man was disabled? Three, Your Honor, according to the statutory provisions. And all three of them agreed that he was disabled? Yes, Your Honor. And as we pointed out in the briefs, the doctor's conclusions of disability were all dependent upon these statements of pain stated by Mr. Lambert when he was doing his functional test. Sure. So doctors every day determine what type of pain a patient is in before they give him surgery or before they determine to give him medications. So the doctors are giving us their opinion or giving the board their opinion on whether or not this individual is in pain, correct? That is correct. So then you have a pension board who are what, lawyers or just regular citizens saying, I don't believe what those doctors are saying. This guy is incredible. So if he's lying to us, we think he's lying to us. Therefore, he must have been lying to the doctors. Doctors don't have the medical ability to determine whether or not this man was really in pain. So we're supposed to buy what the pension board says and just totally disregard what the doctor's opinions were. Is that what you're saying? In this case, yes, Your Honor. In this case, the doctor's reports and the findings specifically said he, Mr. Lambert, in every, all of the three reports and all the functional capacity evaluations, Mr. Lambert was on record and in the report saying, based upon reports of Mr. Lambert, it hurts when he does this. It hurts when he does that. Therefore, we find that he should be given a disability. And I would point back to the statute, which says that the board considers the opinions of the three physicians that they hire, along with any other such evidence as the board deems necessary. And that's the key here. And that's the statutory test. And going back to the case law, there is additional evidence. The additional evidence we pointed out in our brief and were in the findings are Mr. Lambert testified he was able to control his knee pain with Vicodin or ibuprofen, depending upon the day. The pension board also considered evidence that the functional capacity evaluations stated that he could control his pain levels on the job. The pension board also reviewed the video surveillance. And I want to go on a side note based upon the conversation, question and answer with Mr. Ketterer. Whether or not the video was actually visible to the trial court, there's a long, lengthy discussion on the record that's transcribed about what was in the video. And Mr. Ketterer and his client had every chance to object and bring out all the arguments regarding what was on the video, whether or not we can see that that's in the record and it's part of the record before this court. And it was before the trial court as well. What other evidence? What other evidence? I'm OK. I'm off my tangent now. And so the video evidence showed him walking up steps carrying household objects. It showed the other evidence was his demeanor over the course of several hearings on this matter. It was continued with his demeanor, his getting up, his standing, his walking around, the way he answered questions before the board, and the fact that he had recently moved to Indiana from Downers Grove and requiring him to travel two hours where he had previously told the board he couldn't sit for more than a half an hour. Well, that's a good point that you just brought up because what would the board have expected him to do, morph himself there? How else was he going to get to the hearing? It's not what the board expects him to do. No, but my point is they're saying, oh, he sat for two hours, so therefore he's probably not disabled. What could he have done to show the board that it's very difficult for me to sit for two hours? What, not show up and just call and say I can't come because it's too hard to sit for two hours? That's a very good question, Your Honor. I think the right answer in terms of the perspective of the board was that he shouldn't have said in the first place it's impossible for me to sit for half an hour. He shouldn't have testified to that because that was a real hit to his credibility when actual evidence showed that that was not the case. Well, how do you know he didn't stop at his rest stop and get out and walk around every half an hour? I don't remember exactly what the transcript said, but he was questioned about this directly, and he didn't provide that answer. In this particular manner, do you do the work? Are you in the hearings? My partner was in the hearing. Okay. Is it common that the panel, and I think this is a question when your opponent said they testified, and I said who testified? Because in reading these transcripts, I find that these gentlemen here testify quite a bit. Do they do this often? Do they often give their opinion and kind of defend one side or the other? Yes, Your Honor. I believe that the pension board is comprised statutorily in order to put people in the position that know what they're talking about. It has firefighter members. It has retired firefighter members and also has somebody of interest there appointed by the mayor for the financial aspects. Aren't they supposed to be independent arbiters? They are, Your Honor, but they do have the powers to subpoena and talk to other firefighters and get evidence on their own. So their position should be no different than that of a trial court judge, correct? I don't know if I would go that far, Your Honor. This is not a trial, and that leads me to another point. I don't believe that Mr. Ketterer's arguments ring true regarding foundation of evidence and everything like that. The case law is clear that the strict rules of evidence or a court would do not apply in a pension board setting just so long as fundamental fairness is met. Is it the responsibility of the board to take and accumulate and prepare a record for administrative review and include all the exhibits that were submitted or considered and prepare the record and file it in the trial court? It is, Your Honor. It is our responsibility to answer with as full a record as we possibly can. Regarding the missing sheets, we don't know where those two missing pages went, but they were explained fully. What about the missing video? I don't remember ever there being a motion to get that video. I could be incorrect, Mr. Ketterer. Why wouldn't it be considered part of the record and made part of the record? I agree that it probably should have, but I assert to this court that anything that we relied upon in the findings and the trial court relied on below is contained in the transcript regarding the viewing of that. So it's your position the board did not rely on the video at all? It's my position that we did rely on the video. Then why isn't it in the record? I don't have a good answer for that, Your Honor, but any part of that is contained in the transcript, and that was what we relied on the findings. That's what the trial court relied on. Well, the board could not have relied on what was in the transcript before the trial court. No, no, the transcript before the pension board. Oh, I see. Okay. You mentioned that the firefighter here could control his pain with Vicodin. Is it the position of the Downsville Fire Department that it's okay to have someone on duty while taking Vicodin? I don't have an answer for that. Okay. It depends on the… Let me ask you this question, then. Is it all right for the board to simply substitute their observations for those of experts? I believe in the case of credibility on whether Mr. Lambert was telling the truth, I believe the answer to that question is yes. Okay. Doctors are not in a position to say, I don't believe that you're not telling, I don't believe you're telling the truth regarding that patient. You're telling me that an expert, a physician, cannot ever say in a report, I think someone's malingering? I think they do that all the time. In our experience, doctors typically tend to say, based upon the patient's statement of how this happened and their pain, this is what I believe, and also with the physical evidence. And there simply has been no showing whatsoever that the physical evidence showed that he was so disabled that he could not perform his duties at the time of the hearings. And I understand this court's concern with this. It's a very unusual situation, which is why we're all the way up here in the district court. And, frankly, this is something that is unanimous, and all of the members agreed that Mr. Lambert was not telling the truth to them. So is it the board's position that Mr. Lambert is a liar, that he made up his beliefs, his feelings, his testimony that he was in pain, or that he was malingering, or all of the above? It's the pension board's findings that they did not believe that he was telling the truth with regard to his level of pain. And that that tainted all of their evidence, basically. And that was what all the other evidence was based upon. Okay. And so, therefore, we'd like you, this court, to please uphold the decision of the pension board and uphold the finding of the trial court in this regard as well. Thank you. Any other questions? No. Any other questions? Okay. Thank you. Do you wish to reply? Three short bits. And I think the justices hit on this. First of all, as has been presented, the statutory duty to present the record in entirety to the court is the board's, not mine. I made my effort. The second thing they've acknowledged, in the records it says he may be able to learn how to manage his pain. That undercuts all their theories. You can't manage something that doesn't exist. And to manage the pain, he'd be on Vicodin. Well, policemen and firemen are not allowed to work. But didn't your client also say that he was off Vicodin? There seems to be a conflict in that. He did take it on a regular basis when he needed it, he would take it. So he didn't have pain all the time. If the pain got to the level that he wanted to escape complete pain, he took Vicodin. And then he said that if not, if he wasn't taking Vicodin, he was taking Tylenol or something else. Is that what he said? Right. But I was just going to remind you of the drugs that you cannot report for duty. Great. The other point I'd like to make, I cited to you the various cases. You have the right to go in and review this. If the record does not disclose evidence supporting the agency's determination, it's your duty as a reviewing court to grant relief. That's the basket field case. When you review the record, they say a reviewing court must look at all the evidence in opposition to the challenge finding, as well as the evidence that supports it. And the reviewing court may determine that the decision of the administrative agency is just and reasonable in light of all the evidence presented. And that you start with the basic premise that their findings are prima facie true and correct, but they must be based on facts established by competent evidence. There is no evidence in here other than their subjective beliefs. This decision is based on conjecture and speculation, which there's a voluminous amount of case law that says you can't rest it on that. And with that, unless there's other questions, I would ask that it be reversed and the decision to award him a minor duty disability detention be entered. Any other questions? No. Gentlemen, thank you very much. Thank you. We are in recess.